[869 NE2d 646, 838 NYS2d 470]

In the Matter of Zoraida Melendez, Respondent, v Brian J. Wing, as Commissioner of the State of New York Office of Temporary and Disability Assistance, Appellant, et al., Respondents.

Argued May 1, 2007; decided June 7, 2007

**POINTS OF COUNSEL**

*Andrew M. Cuomo, Attorney General,* New York City (*Oren L. Zeve, Barbara D. Underwood* and *Michael S. Belohlavek* of counsel), for appellant. I. The terms of the executive budget and the accompanying regulation require that social services officials include any supplemental security income benefits when calculating an emergency shelter allowance. (*Pataki v New York State Assembly,* 4 NY3d 75; *Matter of DaimlerChrysler Corp. v Spitzer,* 7 NY3d 653; *Matter of Albano v Kirby,* 36 NY2d 526; *Riley v County of Broome,* 95 NY2d 455; *Matter of ATM One v Landaverde,* 2 NY3d 472; *Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.,* 2 NY3d 249; *Matter of Bernstein v Toia,* 43 NY2d 437; *Aluminum Co. of America v Central Lincoln Peoples' Util. Dist.,* 467 US 380; *Arbegast v Board of Educ. of S. New Berlin Cent. School,* 65 NY2d 161; *Matter of Hickey v Carey,* 275 App Div 964.) II. The emergency shelter allowance does not constitute "public assistance" within the meaning of Social Services Law § 131-c. (*Anglin v Anglin,* 80 NY2d 553; *Matter of Blossom View Nursing Home v*

*Novello,* 4 NY3d 581; *Iazzetti v City of New York,* 94 NY2d 183; *Matter of Nelson v Roberts,* 304 AD2d 20.) III. Although Social Services Law § 131-c mandates inclusion of household members in a minor's application for public assistance, it does not otherwise constrain the Office of Temporary and Disability Assistance's exercise of its agency expertise. (*King v Smith,* 392 US 309; *Bray v Dowling,* 25 F3d 135; *Skidgel v Maine Dept. of Human Servs.,* 994 F2d 930; *Matter of Albano v Kirby,* 36 NY2d 526.)

*Housing Works, Inc.,* New York City (*Armen H. Merjian* of counsel), for Zoraida Melendez, respondent. I. The Social Services Law prohibits appellant from considering Chastity's supplemental security income benefits when calculating the family's public assistance benefits. (*Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y.,* 86 NY2d 198; *Matter of Tucker v Board of Educ., Community School Dist. No. 10,* 82 NY2d 274; *Doe v Doar,* 26 AD3d 787; *Matter of Genin v Toia,* 47 NY2d 959; *Folsom v Blum,* 554 F Supp 828; *Matter of Pena v Dowling,* 229 AD2d 497; *Matter of Reeves v Fahey,* 65 AD2d 633; *Matter of Schimmel v Reed,* 50 AD2d 1085, 40 NY2d 887; *Matter of Hernandez v Barrios-Paoli,* 93 NY2d 781; *Albright v Metz,* 88 NY2d 656.) II. Appellant's argument that the emergency shelter allowance operates beyond the purview of the Social Services Law is wholly without support. (*Matter of Rodriguez v Wing,* 94 NY2d 192; *Stone v McGowan,* 308 F Supp 2d 79.) III. Under settled law, the regulation cannot contravene the invisibility statute. (*Doe v Doar,* 26 AD3d 787; *Matter of Jones v Berman,* 37 NY2d 42; *Weiss v City of New York,* 95 NY2d 1; *Matter of Hernandez v Barrios-Paoli,* 93 NY2d 781; *Matter of Beer Garden v New York State Liq. Auth.,* 79 NY2d 266; *Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Falls-burg,* 78 NY2d 194; *Seittelman v Sabol,* 91 NY2d 618.) IV. The appropriation in no way abrogates the Social Services Law by implication, much less explicitly. (*Matter of Genin v Toia,* 47 NY2d 959; *Local Govt. Assistance Corp. v Sales Tax Asset Receivable Corp.,* 2 NY3d 524; *Matter of New York Pub. Interest Research Group v Dinkins,* 83 NY2d 377; *Matter of Natural Resources Defense Council v New York City Dept. of Sanitation,* 83 NY2d 215; *Iazzetti v City of New York,* 94 NY2d 183; *Matter of Levy v Evans,* 103 AD2d 681; *Pataki v New York State Assembly,* 4 NY3d 75.) V. Appellant's policy concerns are appropriately addressed to the Legislature, not the courts. (*Doe v Doar,* 26 AD3d 787.)

**OPINION OF THE COURT**

READ, J.

This appeal calls upon us to decide whether section 131-c (1) of the Social Services Law excludes minors who receive federal supplemental security income (SSI) from the family group for purposes of determining eligibility for and the level of public assistance. For the reasons that follow, we conclude that it does. We further decide that the Legislature superseded this requirement in its appropriation for the emergency shelter allowance (ESA) for the 2006-2007 fiscal year.

I.

In 2002, petitioner Zoraida Melendez resided in the Bronx with her spouse and three minor children. She received public assistance that included an ESA for individuals diagnosed with acquired immunodeficiency syndrome (AIDS) or human immunodeficiency virus (HIV)-related illness, and family members residing with them. Melendez's public assistance was administered by the New York State Office of Temporary and Disability Assistance (OTDA) through the New York City HIV/AIDS Services Administration (HASA), a part of the City's Human Resources Administration (HRA). Additionally, Melendez's daughter Chastity received SSI because of a disability.

Melendez's monthly public assistance totaled $2,019, the amount budgeted for Melendez, her spouse and minor children (excluding Chastity), comprising several components, including the ESA.[1] In other words, when calculating Melendez's public assistance, HASA did not count Chastity as a member of the household and disregarded her SSI benefits, which were then $568 a month. At some point in 2002, however, HASA for the first time budgeted Melendez's ESA using software that reflected the methodology in 18 NYCRR 352.3 (k), rather than making the calculations manually. This forced HASA to include Chastity in the household and to take her SSI income into account when figuring the ESA, which cut Melendez's monthly public assistance from $2,019 to $1,539, or $480 less than she

1. The $2,019 consisted of $307 (basic needs for household of four); $38.70 (home energy allowance for household of four); $30 (supplemental home energy allowance for household of four); $1,450 ($480 for Melendez plus $330 for three additional individuals in household = $1,470, reduced to $1,450, Melendez's actual monthly rent due, the maximum ESA); and $193.74 (an additional allowance for nutrition and transportation authorized by the City for which Melendez was eligible because of her HIV-related illness) = $2,019 (rounded).

had been receiving.[2] In December 2002, she requested a fair hearing before an administrative law judge to contest HASA's determination, which the Commissioner of OTDA (Commissioner) upheld in a decision dated February 7, 2003.

In April 2003, Melendez commenced this CPLR article 78 proceeding against the Commissioner, as well as against the Commissioner of HRA and HASA's Acting Deputy Commissioner (collectively, City respondents), asking Supreme Court to review and annul the decision after fair hearing.[3] On January 9, 2004, Supreme Court denied Melendez's petition, emphasizing OTDA's longstanding policy to include SSI benefits in an ESA calculation, as embodied in 18 NYCRR 352.3 (k) and provisions in the State's 1993-1994 Aid-to-Localities Budget (L 1993, ch 53). On June 16, 2005, the Appellate Division reversed Supreme Court's judgment, concluding that 18 NYCRR 352.3 (k) conflicted with Social Services Law § 131-c (1). The Court interpreted this statute as prohibiting HASA from considering Chastity's SSI benefits as family resources when calculating Melendez's ESA, and remanded the matter to Supreme Court for further proceedings.

In an order and judgment filed on July 21, 2006, Supreme Court granted Melendez's petition in full; annulled the decision after fair hearing; and directed the Commissioner and the City

---

**2.** According to calculations supplied by OTDA in this litigation, the $1,539 consisted of $687.70 (total assistance for household of four, including $307 [basic needs], $38.70 [home energy allowance], $30 [supplemental home energy allowance], and $312 [shelter allowance]); $658 (the ESA calculated on the basis of a household of five, using the methodology in 18 NYCRR 352.3 [k]); and $193.74 (an additional allowance for nutrition and transportation authorized by the City for which Melendez was eligible because of her HIV-related illness) = $1,539 (rounded). Principally because Melendez's ESA was already capped at $1,450 (her actual monthly rent due), she was entitled to only a slightly larger benefit when the ESA was calculated for a household of five rather than four, which was offset by the treatment of Chastity's SSI benefits as family income. The result was a significant net loss, causing the household's allowance for shelter to drop by $480 a month, from $1,450 to $970 ($312 [normal shelter allowance for household of four] + $658 [the ESA]).

**3.** The City respondents filed an answer asking Supreme Court to dismiss Melendez's petition against them. They took the position that they were bound by OTDA's determination after fair hearing, and were "commanded by statute to follow the guidelines handed down by [OTDA] concerning eligibility for public assistance, including emergency shelter allowances," citing *Matter of Beaudoin v Toia* (45 NY2d 343 [1978]) and *Jiggetts v Grinker* (148 AD2d 1, 21 [1st Dept 1989]). The City respondents apparently have not participated in this proceeding since filing their answer. The Attorney General represents that OTDA has provided them with copies of relevant correspondence during the course of the litigation.

respondents to remove Chastity from Melendez's public assistance household and calculate her public assistance without consideration of Chastity's SSI benefits, to pay Melendez $20,825, which he concluded was the sum erroneously withheld from her through June 2006, and to cease any efforts to recoup benefits deemed to have been an overpayment. The Commissioner successfully sought our permission to appeal, bringing up the Appellate Division's prior order for review.

## II.

Section 131-c (1) of the Social Services Law states that

"[f]or the purposes of determining eligibility for and the amount of assistance payable, the social services district shall, when a minor is named as an applicant for public assistance, require that his or her parents and minor brothers and sisters also apply for assistance and be included in the household for purposes of determining eligibility and grant amounts, if such individuals reside in the same dwelling unit as the minor applying for assistance. Any income of or available for such parents, brothers and sisters which is not disregarded under subdivision eight of section one hundred thirty-one-a of this article, shall be considered available to such household. *The provisions of this subdivision shall not apply to individuals who are recipients of federal supplemental security income benefits or additional state payments pursuant to this chapter,*[4] or to individuals whose relationship to the minor is that of stepbrother or stepsister, or to any other individuals whose needs are excluded pursuant to department regulations consistent with federal law and regulations" (emphasis added).

This provision was adopted by the Legislature in 1985 to bring New York law into line with amendments to the federal Aid to Families with Dependent Children (AFDC) program,[5] which were adopted by Congress as part of the Deficit Reduction Act

---

**4.** "[A]dditional state payments" are payments by social services districts or by the federal government on behalf of the State "to aged, blind and disabled persons who are receiving, or who would but for their income be eligible to receive, federal supplemental security income benefits" (Social Services Law § 300 [5]).

**5.** The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) (42 USC § 601 *et seq.*, as added by Pub L 104-193, 110 US

of 1984 (DEFRA) (Pub L 98-369, 98 US Stat 494 [1984]; *see* Mem in Support, Bill Jacket, L 1985, ch 42, at 6). Prior to DE-FRA, the custodial parent had the option to exclude a child with independent sources of income from the family for which AFDC eligibility and benefits were determined. This made sense whenever a child's income (for example, support payments made by a noncustodial parent) exceeded the incremental AFDC benefit available to the family.

To limit this option, DEFRA adopted the filing-unit rule, which generally put parents and minor siblings who lived together into a single group whose combined income, resources and needs were pooled for purposes of determining AFDC eligibility and benefit level (*see* former 42 USC § 602 [a] [38], as added by DEFRA § 2640 [a] [3]). The filing-unit rule applied "except as otherwise provided" by the statutory provisions governing AFDC (*id.*). In this regard, DEFRA notably did not amend the so-called invisibility rule, an AFDC provision that prohibited states from taking an SSI recipient's presence and income into account when figuring out a household's AFDC eligibility and benefits (*see* former 42 USC § 602 [a] [24]; *Corrigan v Affleck*, 523 F Supp 498, 502 [D RI 1981] ["(C)ourts that have interpreted § 602 (a) (24) have been unanimous in concluding that this section mandates that the amount of assistance payments to AFDC recipients sharing households with SSI beneficiaries must be calculated . . . as though the SSI beneficiaries living in the house were not in fact present"]; *Calkins v Blum*, 511 F Supp 1073, 1095-1096 [ND NY 1981] [discussing legislative history of the invisibility rule]; *see also* former 42 USC § 612, as added by Pub L 96-272 § 303, 94 US Stat 500 [1980]).

As the Senate Committee on Finance explained, the filing-unit rule "require[d] States to include in the filing unit the parents and all dependent minor siblings (except SSI recipients and any stepbrothers and stepsisters) living with a child who applie[d] for or receive[d] AFDC" (Sen Print 98-169, 98th Cong, 2d Sess, at 980). The Committee remarked that this change would "end the present practice whereby families exclude members with income in order to maximize family benefits, and

---

Stat 2105 [1996]) abolished AFDC, the federal-state program that provided financial assistance for needy dependent children and the parents or relatives who lived with or cared for them, and established Temporary Assistance for Needy Families (TANF) in its place. Under TANF, each state receives a block grant with which to administer its welfare program.

will ensure that the income of family members who live together and share expenses is recognized and counted as available to the family as a whole" (*id.*). Similarly, the House Conference Report for DEFRA commented that "[the amended law] requires States to include in the filing unit the parents and all minor siblings living with a dependent child who applies for or receives AFDC. SSI recipients and stepbrothers and stepsisters are excluded from this requirement" (HR Conf Rep 98-861, 98th Cong, 2d Sess, at 1407, reprinted in 1984 US Code Cong & Admin News, at 1445, 2095). As the Eleventh Circuit Court of Appeals observed after reviewing section 602 (a) (38)'s text and legislative history, "Congress intended to exclude only recipients of SSI benefits, and any stepbrothers and stepsisters of the dependent child from [the filing-unit rule]" (*Oliver v Ledbetter*, 821 F2d 1507, 1512-1513 [11th Cir 1987] [concluding that Old Age, Survivors, and Disability Insurance (OASDI) benefits received by children must be included when calculating their co-resident siblings' eligibility for AFDC]).

The Commissioner argues that section 131-c (1) leaves it up to him to decide how to handle minors who are SSI recipients when calculating public assistance benefits because its provisions "shall not apply" to them; and that "the fact that a mandatory inclusion rule shall not apply to certain persons [i.e., SSI recipients] does not logically compel an interpretation that a mandatory exclusion [i.e., of SSI recipients] exists." While plausible in the abstract, this reading of the text conflicts with the federal law that section 131-c (1) was meant to mirror. In short, the Legislature must have intended section 131-c (1) to mandate exclusion of SSI recipients from the filing unit, rather than merely vest the Commissioner with discretion to exclude them. Otherwise, the statute would not have conformed with federal law in 1985 (specifically, the filing-unit and invisibility rules), as was required for the State to continue to participate in the AFDC program and to receive 50% reimbursement for its program expenditures. AFDC has since been repealed, but that does not somehow implicitly amend section 131-c (1), or alter the Legislature's purpose and intent at the time it enacted this statute.

## III.

The ESA exists only by virtue of an annual appropriation in the State budget. Accordingly, as an alternative defense of the way HASA calculated Melendez's ESA in late 2002, the Com-

missioner claims that the budget, as supplemented by regulation, annually superseded any application of section 131-c (1) to ESAs. At a minimum, the Commissioner argues, the Legislature fixed any previous deficiency in the appropriation language when it adopted the State budget for fiscal year 2006-2007. In his view, Supreme Court thus "erred as a matter of law when, on remand, it omitted [Chastity's] SSI benefits when calculating the retroactive benefits owed after April 1, 2006."

The Legislature first enacted the ESA in the 1988-1989 Aid-to-Localities Budget, which included the following language:

> "*Notwithstanding any inconsistent provisions of title 8 of article 5 of the social services law,* up to $950,000 of the amount appropriated herein shall be made available by the department to reimburse 50 percent of approved expenditures made by social services districts under the emergency assistance for aged, blind, and disabled program, after first deducting therefrom any federal funds received or to be received on account thereof, for emergency shelter payments which shall be provided to *persons, determined to be eligible for or receiving federal supplemental security income benefits and/or additional state payments, who have been medically diagnosed as having acquired immune deficiency syndrome (AIDS) and who are homeless or are faced with homelessness and for whom no viable and less costly alternative housing is available.* Each emergency shelter payment provided hereunder *shall equal the difference between such person's and his or her family's net available income, including any public assistance and supplemental security income benefits and/or additional state payments, and such person's and his or her family's public assistance needs using the hotel/motel per diem rate equivalent as the applicable shelter maximum.* The hotel/motel per diem rate equivalent shall equal the hotel/motel per diem provided to recipients of public assistance as specified in department regulations in effect January 1, 1988, and as appropriate to the size of the public assistance household which includes the person or persons with AIDS multiplied by 30" (L 1988, ch 53, § 1, at 984 [emphasis added]).

Thus, the Legislature approved a $950,000 appropriation to fund ESAs, which specified who was entitled to moneys from

this appropriation (individuals eligible for or receiving SSI benefits who were diagnosed with AIDS and were homeless or facing homelessness and who had no less costly alternative housing available), and how to distribute these moneys (compute an ESA as the difference between individual/family net available income, including public assistance and SSI benefits, and individual/family public assistance needs using the hotel/motel per diem rate equivalent as the shelter maximum). The appropriation expressly superseded any contrary statutory provisions in title 8 of article 5 of the Social Services Law, which governs emergency assistance for aged, blind and disabled persons.[6] On August 3, 1988, the Commissioner of Social Services adopted a companion emergency regulation, effective April 1, 1988, which tracked the conditions of eligibility and methodology for computing ESAs in the appropriation, and imposed related counseling and reporting requirements on social services districts (see former 18 NYCRR 397.11).

The language addressing ESAs in the 1989-1990 Aid-to-Localities Budget was the same as the previous year's language, except that ESAs were also made available to individuals diagnosed with HIV-related illness (see L 1989, ch 53, § 1, at 828-829 [appropriation of $1.5 million for fiscal year 1989-1990]; see also L 1991, ch 53, § 1, at 991 [no change from language in budget for fiscal year 1989-1990; appropriation of $3 million for fiscal year 1991-1992]). In 1992, however, the terms of the ESA appropriation were significantly altered for fiscal year 1992-1993:

> "Notwithstanding any inconsistent provisions of law, the department shall reimburse 50 percent of approved expenditures made by social services districts under the emergency assistance for families, emergency assistance for adults, aid to dependent children, and home relief programs, after first deducting therefrom any federal funds received or to be received on account thereof, for emergency shelter payments which shall be provided to persons who have been medically diagnosed as having acquired immunodeficiency syndrome (AIDS) or HIV-related illness and who are homeless or are faced with homelessness and for whom no viable and less costly alternative housing is available. Each emergency

---

6. Section 131-c (1) is codified in title 1 of article 5.

shelter payment provided hereunder shall equal *the difference between such person's and his or her family's net available income, including any public assistance and supplemental security income benefits and/or additional state payments, and such person's and his or her family's public assistance needs using an emergency monthly shelter allowance not to exceed $480 for the first person in the household and $330 for each additional person in the household, but in no event exceeding the actual monthly rent"* (L 1992, ch 53, § 1, at 933-934 [emphasis added]).

Rather than setting out a maximum amount for ESAs as in previous budgets, this legislation authorized payment of up to 50% of approved expenditures made by social services districts under four different public assistance programs (emergency assistance for families, emergency assistance for adults, AFDC and home relief). Thus, ESAs were no longer available only to those AIDS or HIV sufferers who were eligible for or were receiving SSI benefits. In addition, the appropriation expressly superseded *any* contrary statutory provision, and based the ESA on a per capita allowance, up to a maximum of actual monthly rent. Importantly, the appropriation still specified that, for purposes of calculating the ESA, net available income would include any SSI benefits payable to applicants and/or their families.

Thereafter, the Legislature enacted identical language—with the same conditions governing eligibility for and distribution of ESAs—in its Aid-to-Localities Budget for fiscal years 1993-1994, 1994-1995 and 1995-1996 (*see* L 1993, ch 53, § 1, at 945; L 1994, ch 53, § 1, at 864-865; and L 1995, ch 53, § 1, at 973, respectively). In 1996, however, the appropriation language was reworked and substantially shortened, although the ESA was broadened to include transportation and nutrition payments, and there was a proviso added that ESA funds could not be used to pay costs eligible for reimbursement under medical assistance or other programs. Significantly for purposes of this appeal, the methodology for calculating or distributing ESAs was left out altogether (*see* L 1996, ch 53, § 1, at 632).

For the ensuing nine years, the language did not change; it was repeated verbatim in each year's ESA appropriation (*see* L 1997, ch 56, § 1, at 1645-1646; L 1998, ch 53, § 1, at 775; L 1999, ch 53, § 1, at 858; L 2000, ch 53, § 1, at 816-817; L 2001, ch 53, § 1, at 544; L 2002, ch 53, § 1, at 1179-1180; L 2003, ch

53, § 1, at 919; L 2004, ch 53, § 1, at 880; L 2005, ch 53, § 1, at 762-763). As a result, for a decade the methodology for calculating an ESA was set forth only in regulation, principally 18 NYCRR 352.3 (k). OTDA argues that this was sufficient authority for it to disregard section 131-c (1) because the regulation maintained the formula approved annually by the Legislature for many years. We disagree. Once the methodology vanished from the appropriation language, and in the absence of any compensating language, 18 NYCRR 352.3 (k) lacked a statutory basis insofar as it conflicted with section 131-c (1).

After the Appellate Division's decision in this appeal, however, the Legislature enacted the following appropriation language in the State budget for the 2006-2007 fiscal year:

> "*Notwithstanding any inconsistent provisions of law*, funds appropriated herein shall be used by [OTDA] to reimburse 50 percent of the non-federal share of approved expenditures made by social services districts on or after April 1, 1996, after first deducting therefrom any federal funds received or to be received on account thereof, for emergency shelter, transportation, or nutrition payments which the district determines are necessary to establish or maintain independent living arrangements among persons who have been medically diagnosed as having acquired immunodeficiency syndrome (AIDS) or HIV-related illness and who are homeless or are faced with homelessness and for whom no viable and less costly alternative housing is available; provided, however, that funds appropriated herein may only be used for such purposes if the cost of such allowances [is] not eligible for reimbursement under medical assistance or other programs. *Each emergency shelter payment provided hereunder shall equal the difference between such person's and his or her family's net available income, including any public assistance and supplemental security income benefits and/or additional state payments, and such person's and his or her family's public assistance needs, but in no event exceeding the actual monthly shelter payment*" (L 2006, ch 53, § 1, at 742-743, eff Apr. 1, 2006 [emphasis added]).

This language clearly supersedes *any* inconsistent provisions of state law—which necessarily includes section 131-c (1)—and,

of course, Congress repealed the federal invisibility rule in 1996. Further, OTDA is unambiguously instructed to consider applicants' and/or their family members' SSI benefits as income when budgeting ESAs. As a result, Supreme Court should have counted Chastity's SSI benefits as family income for the months of April through June 2006, the last month covered by his order and judgment.

The Commissioner's remaining arguments are without merit.

Accordingly, the judgment appealed from and order of the Appellate Division brought up for review should be modified by remitting to Supreme Court for further proceedings in accordance with this opinion, and, as so modified, affirmed, with costs to petitioner.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Judgment appealed from and order of the Appellate Division brought up for review modified, etc.