This opinion is uncorrected and subject to revision before publication in the New York Reports.
----------------------------------------------------------------------

No. 177
In the Matter of Crystal Hawkins,
            Appellant,
        v.
Elizabeth Berlin, &c., et al.,
            Respondents.

            Andrea G. Hood, for appellant.
            Claude S. Platton, for respondent Elizabeth Berlin.
            Scott Shorr, for respondent Robert Doar.

PIGOTT, J.:

        Under the Social Services Law, a recipient of public assistance must assign to the State and social services district his or her right to child support (see Social Services Law § 158 [5]).  The recipient is entitled to any support payments that exceed the total amount of public assistance received (18 NYCRR 347.13 [f] [3]).  Respondents determined that no such excess

- 1 -

existed in this case, and because their determination was not arbitrary, capricious or erroneous as a matter of law, we affirm.

I.

Beginning in December 1989, petitioner Crystal Hawkins received public assistance from respondent New York City Department of Social Services, also known as the New York City Human Resources Administration (the City).[1]  In May 1990, she gave birth to a son, Michael, who was added to her public assistance case.  As a condition of receiving public assistance, petitioner assigned her right to child support for Michael, which the City then attempted to collect from Michael's father (see Social Services Law §§ 158 [5], [6] [i]).

In January 2007, the Social Security Administration (SSA) determined Michael was eligible to receive Supplemental Security Income (SSI), retroactive to September 2005.  Michael's eligibility for SSI, however, made him ineligible for public assistance.  The City removed him from petitioner's case in January 2007 and canceled the assignment of support rights going forward, though it continued to collect child support arrears that had accrued prior to January 2007.[2]  SSA ultimately

_____

[1] As of 2001, petitioner received public assistance benefits under the State's Safety Net Assistance Program (see Social Services Law § 157 et seq.).

[2] The record indicates that petitioner received approximately $10,000 in child support payments directly from Michael's father after 2007.

reimbursed the City $1,232.50 for the public assistance benefits it paid on Michael's behalf while his SSI application was pending.

In June 2011, petitioner requested what is called a first-level desk review[3] from the City to determine whether she was owed any excess child support payments.  The City determined no payments were owed because it had not collected sufficient child support arrears to exceed the public assistance provided to petitioner's household.  After learning of the City's determination, petitioner requested a so-called second-level desk review from respondent New York State Office of Temporary and Disability Assistance (the State).  The State confirmed the City's initial determination.

Petitioner then commenced this CPLR article 78 proceeding challenging respondents' determinations as arbitrary, capricious and erroneous as a matter of law.  Supreme Court denied the petition and dismissed the proceeding, and a divided Appellate Division affirmed (118 AD3d 496 [1st Dept 2014]).  The majority concluded that respondents rationally determined no payment was owed since the total amount of public assistance paid to petitioner and her family exceeded the amount of child support

[3] A first-level desk review is "an accounting of the collections and disbursements made on behalf of a current or former recipient of public assistance . . . who is or was receiving child support enforcement services" (18 NYCRR 347.25 [a] [1]).

arrears and other reimbursement the City collected when her public assistance case closed in February 2007 (id. at 499-500). The dissenting Justices agreed with the majority that petitioner was not entitled to any child support collected on Michael's behalf from September 2005 through January 2007 (id. at 502 [Gische, J., dissenting]). They would have modified the City's determination, however, "to the extent of remanding the matter back for a recalculation of benefits paid to the family to exclude those periods of time after 2007 when Michael was not statutorily considered part of petitioner's family" (id.).

Petitioner appealed as of right pursuant to CPLR 5601(a).

II.

As a condition of receiving public assistance, a person must assign to the state and local social services district "any rights to support that accrue during the period that a family receives [benefits]" (Social Services Law § 158 [5]). The assignment "terminates with respect to current support rights upon a determination by the social services district that such person is no longer eligible for" assistance (id.). The assignment does not terminate, however, with respect to "any unpaid support obligation that has accrued" (id.). Stated differently, when the City determines that a person is no longer eligible for public assistance, the assignment of current and future support rights ends and the City may collect only those

support payments that already accrued but have not yet been paid, i.e., arrears.  Once support payments are current, they flow directly to the person who is entitled to them.  At any time during the assignment, the City may not collect arrears that "exceed the amount of unreimbursed past assistance" it has paid to the family (see 18 NYCRR 347.13 [f] [3]).

Petitioner contends that she is entitled to current child support payments the City collected from September 2005 to January 2007 as well as child support arrears the City collected after 2007.  Respondents rationally determined that petitioner is entitled to neither of these sums.

With respect to the payments from 2005 to 2007, petitioner argues that the assignment of current support ended when Michael became eligible for SSI and therefore ineligible for public assistance.  Because SSA declared Michael eligible for SSI retroactive to 2005, she claims his assignment terminated in 2005 and the City could not collect current support payments that became due after that date.  Section 158 (5) of the Social Services Law plainly states, however, that the assignment of current support rights terminates "upon a determination by the social services district" that the recipient is no longer eligible for public assistance (Social Services Law § 158 [5]). The City did not render a determination that Michael was ineligible for public assistance until January 2007, when he received his first SSI check (see Social Services Law § 158 [2]

[a person becomes ineligible for public assistance when he begins "receiving federal supplemental security income"]).  That SSA made Michael's SSI benefits retroactive to 2005 does not change the date of the City's determination, which the statute defines as the operative time for terminating the assignment of current support.

Petitioner claims she is entitled to payments the City collected from September 2005 to January 2007 for the additional reason that SSA reimbursed the City for the benefits it paid on behalf of Michael during that time.  According to petitioner, any child support payments the City collected from Michael's father over the same period necessarily exceeded the amount of assistance it provided insofar as the assistance had already been reimbursed by SSA.  Petitioner's claim sounds appealing but ultimately fails.  Respondents properly credited SSA's reimbursement check towards the total public assistance provided to petitioner's family before 2007, and even with that credit, there was no excess.

With respect to arrears collected after 2007, petitioner claims she is entitled to any payment that exceeded the total amount of public assistance her family received. Remember that, pursuant to the assignment, the City may collect support payments that have already accrued so long as those payments do not "exceed the amount of unreimbursed past assistance" the City has provided to petitioner's family (18

NYCRR 347.13 [f] [3]).  Respondents determined there was no excess.  According to their calculations, the City had paid petitioner's family $112,588.33 in public assistance from 1989 until 2011 and recovered only $57,524.00 in child support.  Deducting the $1,232.50 reimbursement check the City received from SSA, respondents determined the City must collect $53,832.33 in child support arrears before petitioner will be entitled to an excess.[4]

Petitioner takes issue with respondents' calculation of "unreimbursed past assistance" because it includes assistance paid to petitioner's family after 2007 (until 2011), when Michael was statutorily excluded from her public assistance budget (see Social Services Law § 131-c [1] [individuals who are recipients of federal supplemental security income benefits are not "included in the household for purposes of determining eligibility and grant amounts"]).  According to petitioner, the City's right to collect child support arrears paid on Michael's behalf is limited to the amount of unreimbursed past assistance paid to the household that included Michael.  Allowing the City to apply support for Michael to public assistance benefits that excluded his needs, she contends, is directly contrary to the Social Services Law.

We need not decide whether respondents' calculations are correct in order to conclude that their determinations were

---

[4] Michael's father owes $46,172.71 in child support arrears.

not arbitrary, capricious or erroneous as a matter of law, because even petitioner's proposed calculation yielded no excess. From 1989 until 2007, the City paid petitioner's family $101,884.41 in benefits and has recouped only $58,756.50. Thus, under any calculation petitioner proposes, the City has not yet collected child support arrears that exceed the unreimbursed benefits her family received.

Accordingly, the order of the Appellate Division should be affirmed, without costs.

Matter of Crystal Hawkins v Elizabeth Berlin, et al.

No. 177

RIVERA, J.(concurring and dissenting in part):

In this appeal, petitioner Crystal Hawkins presents the Court with a question of statutory construction which the majority has ill-advisedly chosen to avoid. In my opinion, the posture of the case requires that we resolve her claim that respondents have misinterpreted the Social Services Law and, as a result, miscalculated her public assistance and child support arrears. To do otherwise places petitioner at risk of future erroneous determinations, even though her argument has merit and entitles her to relief. I, therefore, dissent from that portion of the majority opinion that disposes of petitioner's claims without resolving whether respondents have correctly interpreted and applied the law to petitioner's case.

As required by Social Services Law § 158 (5), petitioner, as a recipient of subsistence payments under the State's Safety Net Assistance program (SNA), on behalf of herself and Michael, assigned to respondent New York City Human Resources Administration (HRA), Michael's child support payments "that accrue during the period that [the] family receives" public assistance. At the age of fifteen, Michael was found eligible for federal Supplemental Security Income (SSI), making him statutorily ineligible for ongoing SNA payments under Social

- 1 -

Services Law § 158 (2).  Thereafter, as a direct result of his status as an SSI recipient, and as mandated by Social Services Law 131-c (1), respondents excluded Michael from petitioner's household, for purposes of calculating future SNA payments to the other members of petitioner's family (Social Services Law § 131-c [1] ["For the purposes of determining eligibility for and the amount of assistance payable. . . . The provisions of this subdivision shall not apply to individuals who are recipients of federal supplemental security income benefits"]).  Morever, pursuant to state regulation, petitioner's family was considered a separate household from Michael, even though Michael lived with petitioner.  As provided for in 18 NYCRR 352.2 (b), "[f]or the purposes of such monthly grants and allowances to households under . . . Safety Net Assistance non-federally participating  . . . children and adults residing with an SSI beneficiary must be considered a separate household from the SSI beneficiary with whom they live."

    Petitioner's assignment of Michael's child support terminated by law once he was deemed ineligible for SNA because he was receiving SSI.  Social Services Law § 158 (5) states expressly that assignment of a person's support payment "terminate[s] with respect to current support rights upon a determination . . . that such person is no longer eligible for [public assistance]."  However, the assignment remains in effect "with respect to the amount of any unpaid support obligation that has accrued during the period that a family received . . .

assistance" (Social Services Law § 158 [5]).  In other words, once Michael was removed from petitioner's household she was entitled to future support payments, but not arrears for payments that accrued during the period before Michael's exclusion (see Social Services Law § 158 [5], 131-c [1]).

As is her right, petitioner requested an accurate "accounting of the collections and disbursements made on [her] behalf" as a "former recipient of public assistance who is or was receiving child support enforcement services" (18 NYCRR 347.25 [a] [1]).  I agree with the majority that petitioner is not entitled to child support arrears HRA collected from January 2005 through September 2007.  The applicable statutory and regulatory provisions establish that there is no legal impediment to HRA's collection of child support payments assigned by petitioner under Social Services Law § 158 (5), so long as the amount collected does not exceed the remaining amount of unreimbursed public assistance (Social Services Law § 158 [5]; 17 NYCRR 347.13 [f] [3]).  Here, the child support collected through January 2007 was credited against public assistance paid to petitioner's family, and since, even under the calculation methodology advocated by petitioner, HRA has not received support payments in excess of public assistance payments actually provided to petitioner up to 2007, she has no claim to these support arrears.

However, her claim for a proper determination of the child support arrears has merit.  As explained in the determination of the New York State's Division of Child Support Enforcement of the

Office of Temporary and Disability Assistance (ODTA), for accounting purposes, excess support payments consist of the amount of child support recovered that is greater than the amount of total cash assistance (minus any other reimbursements) paid to petitioner for the entire period she was on public assistance. Thus, ODTA calculated petitioner's benefits from 1989 to 2011, subtracted from that amount the child support actually recovered and the SSI reimbursement for Michael's interim payment, and concluded that as of August 1, 2011, $53,832.33 in public assistance remained unreimbursed. Petitioner contends that it was error to include in these calculations any payments for periods from 2007, forward, when Michael was not part of petitioner's household or budget for public assistance purposes. She is correct.

Social Services Law § 158 (5) expressly terminated petitioner's assignment of Michael's support payments to HRA because he was no longer eligible for SNA payments. However, HRA retained rights under the assignment for any arrears for the period during which the family received SNA. The critical question, then, is whether Michael, as the person ineligible for SNA, is part of the public assistance "family" only during those periods when HRA actually provided Michael with SNA payments, or, is Michael also part of the "family" by the mere fact that he resides in petitioner's household, regardless of whether HRA provides for his needs through the SNA program.

Petitioner argues that "family" in Social Services Law § 158

(5) does not include Michael because Social Services Law 131-c (1) removed him from the household for public assistance purposes, and the state's own regulations distinguish between an SSI recipient and the "family with which the individual resides" (18 NYCRR § 353.2 [a] [6]).  Respondents contend that Social Services Law § 158 (5) refers only to when the assignment of support begins and ends, not how to calculate how much public assistance has been paid to petitioner's family for the purpose of determining if the support payments exceeded the public assistance payments.  They further argue that Social Services Law § 131-c (1) does not require that Michael be treated as separate from petitioner's household for all purposes, and should be limited in application to determinations of public assistance eligibility and budget amounts.

Respondents' construction of the statute cannot be squared with the state's statutory and regulatory framework, which treats Michael as a separate household for public assistance purposes (see Social Services Law § 131-c [1]; 18 NYCRR § 353.2 [a] [6]). That separate treatment is a direct consequence of his ineligibility for ongoing SNA payments, meaning HRA did not provide for his needs through the SNA program.  Also, to the extent HRA continued to provide for petitioner, by legal mandate it had to treat Michael as if he was no longer present in her household.  As this Court stated in Matter of Melendez v Wing (8 NY3d 598, 604-605 [2007]), Social Services Law § 131-c (1), mandates exclusion of SSI recipients from the public assistance

household wherein they reside.  Thus, during the time Michael received SSI payments and resided with petitioner, he was not part of petitioner's public assistance "family."  In other words, once he was excluded from petitioner's household, he was not part of a family receiving SNA and child support within the meaning of Social Services Law § 158 (5).  This may be a legal fiction, as respondents argue, but it is a legal fiction that grounds Michael's legal status, and it is this status that matters for purposes of construing the social services law.

Furthermore, as the dissent below correctly noted, references to "family" and "families" in Social Services Law § 131 and Part 347 of the state regulations are only meaningful if interpreted to include the person for whom child support payments are collected.  Certainly, there would be no purpose to collect and credit child support against the public assistance provided to the family if the person receiving child support were not included in the family's grant determination and budget.

Respondents also contend that including Michael within the family for purposes of Social Services Law § 158 (5), regardless of his exclusion from the household for SNA-eligibility and grant allocation purposes, is consistent with federal public assistance legislation requiring assignment of child support by a member of a family receiving public assistance (42 USC § 608 [a] [3]).*

---

* 42 USC § 608 (a) (3) states, "(3) No assistance for families not assigning certain support rights to the State

A State to which a grant is made under section 603 of this title

However, the federal statutory language cited by respondents does not define "family," nor does it explicitly include as a member of the public assistance household any person found ineligible for assistance, but who is entitled to child support payments. Thus, the federal statute provides no additional interpretive guidance or support for respondents' construction of Social Services Law § 158 (5). Aside from the statutory argument promoted by respondents, they assert two policy arguments in support of their determination that the excess child support calculation may include all public assistance provided to petitioner. First, they contend that their construction of Social Services Law 158 § (5) aligns with the federal policy reflected in 42 USC § 608, that child support for one person should be used to offset public assistance to the entire family, on the assumption that families generally share their resources among all members. This Court previously explained this "filing-unit rule" "put[s] parents and minor siblings who lived together into a single group whose combined income, resources and needs were pooled for purposes of determining [public assistance] eligibility and benefit level" (Matter of Melendez, 8 NY3d at

---

shall require, as a condition of paying assistance to a family under the State program funded under this part, that a member of the family assign to the State any right the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person, not exceeding the total amount of assistance so paid to the family, which accrues during the period that the family receives assistance under the program."

604, citing to former 42 USC § 602 [a] [38], as added by DEFRA §
2640 [a] [3]).  Respondents second policy-based argument is that
the application of their methodology for calculating excess child
support maximizes distribution of limited governmental resources
to needy families by adding funds to public assistance programs.

These arguments are unpersuasive.  In Matter of Melendez,
this Court held that our State Legislature specifically intended
that Social Services Law § 131-c (1) exclude SSI recipients from
application of the "filing-unit rule" (Matter of Melendez, 8 NY3d
at 605).  For the reasons I have already discussed, Social
Services Law 131-c (1) does not permit inclusion of an SSI
recipient as part of a public assistance household for the sole
purpose of offsetting that recipient's child support payments
against public assistance payments received by those with whom
the child resides.

Furthermore, these policy arguments ignore the obvious
inconsistency of respondents' position.  If the legislative
intent of Social Services Law § 131-c (1) is to increase a
family's total resources by ignoring Michael's SSI payments when
determining a family's public assistance eligibility and budget
allocation, it would appear to undermine this laudable goal to
permit HRA to withhold from petitioner and Michael any excess
child support arrears--an obvious source of potential monetary
assistance.  Such result is particularly difficult to reconcile
with the overall statutory purpose of SNA and other public
assistance programs which provide a safety net for those members

of our communities, like petitioner and Michael, who face dire financial circumstances (Social Services Law § 131 [1]).

The unfortunate truth is that Michael's father may never pay the entirety of child support he owes, much less the pre-2007 arrears that cover the SNA payments actually provided for Michael. Nevertheless, under the law petitioner is currently entitled to a correct accounting of her public assistance and child support. For that reason, I would remit for an appropriate recalculation, meaning one that permits respondents to offset the support payments HRA collected against the amount of public assistance provided to petitioner during the periods when HRA provided for Michael's needs through the SNA program.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order affirmed, without costs. Opinion by Judge Pigott. Chief Judge Lippman and Judges Abdus-Salaam and Stein concur. Judge Rivera dissents in part in an opinion in which Judge Fahey concurs.


Decided November 23, 2015