*424 Rivera, J.
(concurring and dissenting in part). In this appeal, petitioner Crystal Hawkins presents the Court with a question of statutory construction which the majority has ill-advisedly chosen to avoid. In my opinion, the posture of the case requires that we resolve her claim that respondents have misinterpreted the Social Services Law and, as a result, miscalculated her public assistance and child support arrears. To do otherwise places petitioner at risk of future erroneous determinations, even though her argument has merit and entitles her to relief. I, therefore, dissent from that portion of the majority opinion that disposes of petitioner’s claims without resolving whether respondents have correctly interpreted and applied the law to petitioner’s case.
As required by Social Services Law § 158 (5), petitioner, as a recipient of subsistence payments under the State’s Safety Net Assistance program (SNA), on behalf of herself and Michael, assigned to respondent New York City Human Resources Administration (HRA) Michael’s child support payments “that accrue during the period that [the] family receives” public assistance. At the age of 15, Michael was found eligible for federal Supplemental Security Income (SSI), making him statutorily ineligible for ongoing SNA payments under Social Services Law § 158 (2). Thereafter, as a direct result of his status as an SSI recipient, and as mandated by Social Services Law § 131-c (1), respondents excluded Michael from petitioner’s household for purposes of calculating future SNA payments to the other members of petitioner’s family (Social Services Law § 131-c [1] [“For the purposes of determining eligibility for and the amount of assistance payable . . . (t)he provisions of this subdivision shall not apply to individuals who are recipients of federal supplemental security income benefits”]). Morever, pursuant to state regulation, petitioner’s family was considered a separate household from Michael, even though Michael lived with petitioner. As provided for in 18 NYCRR 352.2 (b), “[flor the purposes of such monthly grants and allowances to households under . . . Safety Net Assistance non-federally participating . . . children and adults residing with an SSI beneficiary must be considered a separate household from the SSI beneficiary with whom they live.”
Petitioner’s assignment of Michael’s child support terminated by law once he was deemed ineligible for SNA because he was receiving SSL Social Services Law § 158 (5) states expressly that assignment of a person’s support payment “terminate[s] with respect to current support rights upon a determination . . . that such person is no longer eligible for [public] as *425 sistance.” However, the assignment remains in effect “with respect to the amount of any unpaid support obligation that has accrued during the period that a family received . . . assistance” (Social Services Law § 158 [5]). In other words, once Michael was removed from petitioner’s household she was entitled to future support payments, but not payments for arrears that accrued during the period before Michael’s exclusion (see Social Services Law §§ 158 [5]; 131-c [1]).
As is her right, petitioner requested an accurate “accounting of the collections and disbursements made on [her] behalf” as a “former recipient of public assistance . . . who is or was receiving child support enforcement services” (18 NYCRR 347.25 [a] [1]). I agree with the majority that petitioner is not entitled to child support arrears HRA collected from January 2005 through September 2007. The applicable statutory and regulatory provisions establish that there is no legal impediment to HRA’s collection of child support payments assigned by petitioner under Social Services Law § 158 (5), so long as the amount collected does not exceed the remaining amount of unreimbursed public assistance (Social Services Law § 158 [5]; 18 NYCRR 347.13 [f] [3]). Here, the child support collected through January 2007 was credited against public assistance paid to petitioner’s family, and since, even under the calculation methodology advocated by petitioner, HRA has not received support payments in excess of public assistance payments actually provided to petitioner up to 2007, she has no claim to these support arrears.
However, her claim for a proper determination of the child support arrears has merit. As explained in the determination of New York State’s Division of Child Support Enforcement of the Office of Temporary and Disability Assistance (ODTA), for accounting purposes, excess support payments consist of the amount of child support recovered that is greater than the amount of total cash assistance (minus any other reimbursements) paid to petitioner for the entire period she was on public assistance. Thus, ODTA calculated petitioner’s benefits from 1989 to 2011, subtracted from that amount the child support actually recovered and the SSI reimbursement for Michael’s interim payment, and concluded that as of August 1, 2011, $53,832.33 in public assistance remained unreimbursed. Petitioner contends that it was error to include in these calculations any payments for periods from 2007 forward, when Michael was not part of petitioner’s household or budget for public assistance purposes. She is correct.
*426 Social Services Law § 158 (5) expressly terminated petitioner’s assignment of Michael’s support payments to HRA because he was no longer eligible for SNA payments. However, HRA retained rights under the assignment for any arrears for the period during which the family received SNA. The critical question, then, is whether Michael, as the person ineligible for SNA, is part of the public assistance “family” only during those periods when HRA actually provided Michael with SNA payments, or, is Michael also part of the “family” by the mere fact that he resides in petitioner’s household, regardless of whether HRA provides for his needs through the SNA program.
Petitioner argues that “family” in Social Services Law § 158 (5) does not include Michael because Social Services Law § 131-c (1) removed him from the household for public assistance purposes, and the State’s own regulations distinguish between an SSI recipient and the “family with which the individual resides” (18 NYCRR 353.2 [a] [6]). Respondents contend that Social Services Law § 158 (5) refers only to when the assignment of support begins and ends, not how to calculate how much public assistance has been paid to petitioner’s family for the purpose of determining if the support payments exceeded the public assistance payments. They further argue that Social Services Law § 131-c (1) does not require that Michael be treated as separate from petitioner’s household for all purposes, and should be limited in application to determinations of public assistance eligibility and budget amounts.
Respondents’ construction of the statute cannot be squared with the State’s statutory and regulatory framework, which treats Michael as a separate household for public assistance purposes (see Social Services Law § 131-c [1]; 18 NYCRR 353.2 [a] [6]). That separate treatment is a direct consequence of his ineligibility for ongoing SNA payments, meaning HRA did not provide for his needs through the SNA program. Also, to the extent HRA continued to provide for petitioner, by legal mandate it had to treat Michael as if he was no longer present in her household. As this Court stated in Matter of Melendez v Wing (8 NY3d 598, 604-605 [2007]), Social Services Law § 131-c (1) mandates exclusion of SSI recipients from the public assistance household wherein they reside. Thus, during the time Michael received SSI payments and resided with petitioner, he was not part of petitioner’s public assistance “family.” In other words, once he was excluded from petitioner’s household, he was not part of a family receiving SNA and child support within *427 the meaning of Social Services Law § 158 (5). This may be a legal fiction, as respondents argue, but it is a legal fiction that grounds Michael’s legal status, and it is this status that matters for purposes of construing the Social Services Law.
Furthermore, as the dissent below correctly noted, references to “family” and “families” in Social Services Law § 131 and part 347 of the state regulations are only meaningful if interpreted to include the person for whom child support payments are collected. Certainly, there would be no purpose to collect and credit child support against the public assistance provided to the family if the person receiving child support were not included in the family’s grant determination and budget.
Respondents also contend that including Michael within the family for purposes of Social Services Law § 158 (5), regardless of his exclusion from the household for SNA-eligibility and grant allocation purposes, is consistent with federal public assistance legislation requiring assignment of child support by a member of a family receiving public assistance (42 USC § 608 [a] [3]).* However, the federal statutory language cited by respondents does not define “family,” nor does it explicitly include as a member of the public assistance household any person found ineligible for assistance, but who is entitled to child support payments. Thus, the federal statute provides no additional interpretive guidance or support for respondents’ construction of Social Services Law § 158 (5).
Aside from the statutory argument promoted by respondents, they assert two policy arguments in support of their determination that the excess child support calculation may include all public assistance provided to petitioner. First, they contend that their construction of Social Services Law § 158 (5) aligns *428 with the federal policy reflected in 42 USC § 608, that child support for one person should be used to offset public assistance to the entire family, on the assumption that families generally share their resources among all members. This Court previously explained this “filing-unit rule” “put[s] parents and minor siblings who lived together into a single group whose combined income, resources and needs were pooled for purposes of determining [public assistance] eligibility and benefit level” (Matter of Melendez, 8 NY3d at 604, citing former 42 USC § 602 [a] [38], as added by Deficit Reduction Act of 1984, Pub L 98-369, § 2640 [a] [3], 98 US Stat 494). Respondents’ second policy-based argument is that the application of their methodology for calculating excess child support maximizes distribution of limited governmental resources to needy families by adding funds to public assistance programs.
These arguments are unpersuasive. In Matter of Melendez, this Court held that our State Legislature specifically intended that Social Services Law § 131-c (1) exclude SSI recipients from application of the “filing-unit rule” (Matter of Melendez, 8 NY3d at 605). For the reasons I have already discussed, Social Services Law § 131-c (1) does not permit inclusion of an SSI recipient as part of a public assistance household for the sole purpose of offsetting that recipient’s child support payments against public assistance payments received by those with whom the child resides.
Furthermore, these policy arguments ignore the obvious inconsistency of respondents’ position. If the legislative intent of Social Services Law § 131-c (1) is to increase a family’s total resources by ignoring Michael’s SSI payments when determining a family’s public assistance eligibility and budget allocation, it would appear to undermine this laudable goal to permit HRA to withhold from petitioner and Michael any excess child support arrears — an obvious source of potential monetary assistance. Such result is particularly difficult to reconcile with the overall statutory purpose of SNA and other public assistance programs which provide a safety net for those members of our communities, like petitioner and Michael, who face dire financial circumstances (Social Services Law § 131 [1]).
The unfortunate truth is that Michael’s father may never pay the entirety of child support he owes, much less the pre2007 arrears that cover the SNA payments actually provided for Michael. Nevertheless, under the law petitioner is currently *429 entitled to a correct accounting of her public assistance and child support. For that reason, I would remit for an appropriate recalculation, meaning one that permits respondents to offset the support payments HRA collected against the amount of public assistance provided to petitioner during the periods when HRA provided for Michael’s needs through the SNA program.
Chief Judge Lippman and Judges Abdus-Salaam and Stein concur; Judge Rivera dissents in part in an opinion in which Judge Fahey concurs.
Order affirmed, without costs.

 42 USC § 608 (a) (3) states,
“(3) No assistance for families not assigning certain support rights to the State
“A State to which a grant is made under section 603 of this title shall require, as a condition of paying assistance to a family under the State program funded under this part, that a member of the family assign to the State any right the family member may have (on behalf of the family member or of any other person for whom the family member has applied for or is receiving such assistance) to support from any other person, not exceeding the total amount of assistance so paid to the family, which accrues during the period that the family receives assistance under the program.”